# EXHIBIT A

12031073-1

H/K

MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
659 Eagle Rock Avenue, Suite #28
West Orange, New Jersey 07052
(800) 358-5922

*RECEIVED & FILED*
*2019 JAN 25 P 12: 02*
*LAW DIV. CIVIL DIV*
*MIDDLESEX VICINAGE*

150 W. 30th Street, Suite 201
New York, NY 10018
(800) 358-5922

By Patrick Timmins, Esq. (NJ Id. No. 008761992)

Attorneys for Plaintiff

| | |
|---|---|
| ROBERT D. MARTENS, SR.,<br><br>Plaintiff,<br>v.<br><br>BAE SYSTEMS, INC.,  Individually and as successor in interest to Kearfott Corporation; BORGWARNER MORSE TEC LLC, as successor-by-merger to Borg-Warner Corporation; BIJUR DELIMON INTERNATIONAL, INC.; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania Corporation f/k/a Westinghouse Electric Corporation; CERTAINTEED CORPORATION; CHEM FLOWTRONICS, INC.; CINCINNATI, INC.; CROWN CORK & SEAL COMPANY, INC.; DANLY MACHINE CORPORATION; DOALL COMPANY; EATON ELECTRICAL, INC. f/k/a Cutler Hammer, Inc.; FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST successor to Felt-Products Manufacturing Co.; FIVES GIDDINGS & LEWIS, LLC, Individually and as successor in interest to Kearney & Trecker Corporation; GENERAL ELECTRIC COMPANY; GENUINE PART COMPANY; GLEASON CORPORATION; HARDINGE, INC.; HONEYWELL INTERNATIONAL, INC., Individually and as successor to Alliedsignal, Inc., The Bendix Corporation | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, MIDDLESEX COUNTY<br><br>DOCKET NO.: MID-L-_____-19AS<br><br>MID-L- 0 0 8 6 8 -1 9 AS<br><br>**Civil Action – Asbestos Litigation**<br><br><br><br>**COMPLAINT, JURY DEMAND, DEMAND FOR ANSWERS TO STANDARD INTERROGATORIES AND DESIGNATION OF TRIAL COUNSEL** |

and Warner & Swasey Company;
INDUSTRIAL BRUSH CO., INC.;
INDUSTRIAL HOLDINGS CORPORATION
f/k/a The Carborundum Company;
LEBLOND, LTD; MAHAFFY & HARDER
EXPORT, INC.; MARATHON PETROLEUM
COMPANY LP; METROPOLITAN
INSURANCE COMPANY; MINE SAFETY
APPLIANCES COMPANY; MONARCH CORP.;
MONARCH, LLC; NIDEC MINSTER
CORPORATION; OCCIDENTAL CHEMICAL
CORPORATION, Individually and as
successor in interest to Hooker Chemicals
& Plastic Corporation, successor in interest
to Durez Plastics & Chemicals Co.; PFIZER,
INC.; PLASTICS ENGINEERING COMPANY;
PNEUMO ABEX LLC, Individually and as
successor-by-merger to PNEUMO ABEX
CORPORATION, successor-in-interest to
ABEX  CORPORATION f/k/a AMERICAN
BRAKE SHOE COMPANY, f/k/a AMERICAN
BRAKE SHOE and FOUNDRY COMPANY
including the AMERICAN  BRAKEBLOK
DIVISION, successor-by-merger to the
AMERICAN BRAKE SHOE and FOUNDRY
COMPANY and THE AMERICAN
BRAKEBLOK CORPORATION, f/k/a THE
AMERICAN BRAKE MATERIALS
CORPORATION; PRATT & WHITNEY
MEASUREMENT SYSTEMS, INC.; PRO
MACH, INC.; PSEG POWER, LLC;
ROCKWELL AUTOMATION, INC.,
Individually and as successor in interest
for Allen Bradley Company and Rostone
Corporation; ROGERS CORPORATION;
SAINT-GOBAIN ABRASIVES, INC. as
successor to Norton Company; SCHNEIDER
ELECTRIC USA, Inc. f/k/a Square D
Company;  TRANE U.S. INC.; UNGERER &
COMPANY; UNION CARBIDE
CORPORATION; UNIVERSAL / DEVLIEG,
INC.; W. J. MALONE ASSOCIATES; WEIL
MCLAIN COMPANY, a division of The
Marley Company; JOHN DOE

CORPORATIONS 1-50; JOHN DOE
CORPORATIONS 51-100;
                   Defendants.

Plaintiff, Robert D. Martens, Sr., by way of complaint against Defendants alleges and says:

### PARTIES - PLAINTIFF

1.      Plaintiff Robert D. Martens, Sr., resides at 365 Fenlon Blvd., Clifton, New Jersey 07014.

2.      From 1965 to 1966, Plaintiff Robert D. Martens, Sr. worked at Aircraft Engineering Products, Inc. in Clifton, New Jersey.

3.      At some point in the mid-1960s, Plaintiff Robert D. Martens, Sr. worked as a laborer packing boxes of perfumes, lipsticks, and powders for Pfizer in New Jersey.

4.      From 1966 to 1968, Plaintiff Robert D. Martens, Sr. worked as a machinist on lathes and milling machines at Union Screw Company in Totawa, New Jersey.

5.      From 1968 to 1970, Plaintiff Robert D. Martens, Sr. worked as a machinist manufacturing parts at Chem Flow in Little Falls. New Jersey.

6.      From 1970 to 1971, Plaintiff Robert D. Martens, Sr. worked as a pipefitter fabricating, cutting and threading pipes for use in fire sprinkler systems at W. J. Malone in Totowa, New Jersey.

7.      From 1971 to 1973, Plaintiff Robert D. Martens, Sr. worked as a chemical operator at Ungerer and Company in Totawa, New Jersey. Mr. Marten's worked on distillers separating oils from crudes and worked in close proximity to the furnaces at the plant.

8.      From 1973 to 1975, Plaintiff Robert D. Martens, Sr. worked as a machinist manufacturing parts at Mahaffy and Harder in Totowa, New Jersey.

9.    From 1975 to 1981 and again from 1985 to 2008, Plaintiff Robert D. Martens, Sr. worked as a machinist in the model shop operating lathes, grinding machines, milling machines, boring mills and grinding wheels fabricating machine parts at Singer Kearfott in Little Falls, New Jersey.

10.    From 1981 to 1982, Plaintiff Robert D. Martens, Sr. worked as a machinist performing maintenance on equipment and machinery at Bomont Industries in Totowa, New Jersey. His job duties required him to regularly and frequently perform, daily maintenance on equipment and machinery, which included, among other activities, installation, upkeep, repair, renovation, manipulation, cutting, sawing, splicing, welding, removing, replacing, and refurbishing of various asbestos-containing products, materials and equipment. He was also regularly and frequently present and in the immediate vicinity of others performing these and other activities with these and other asbestos-containing products, materials and equipment. Additionally, Mr. Marten's job duties required him to work throughout the plant and work in the vicinity of trades performing work.

11.    From 1982 to 1985, Plaintiff Robert D. Martens, Sr. worked as a toolmaker using milling machines, lathes, and grinders at Bijur Lubricating Corporation in Oakland, New Jersey.

12.    From 1985-2008, Plaintiff Robert D. Martens, Sr. returned to Singer Kearfott as a machinist in the model shop operating lathes, grinding machines, milling machines, boring mills and grinding wheels fabricating machine parts in Little Falls, New Jersey.

13.    In the mid-1960s, Plaintiff Robert D. Martens, Sr. wife, Frances Martens, deceased, used asbestos-containing Coty talc powder on her person in the presence of her husband. Frances Marten's use of Coty talc powder released visible dust around Robert D. Martens, Sr., which permeated his breathing space and which he inhaled.

14.     Beginning in the 1960s, and continuing through the 1970s, Robert D. Martens, Sr. performed home remodeling projects, which included the removal of a boiler from the family home, the installation of roofing shingles and felts, installation and cutting of tiles and flooring products which may have contained asbestos, and the installation of drywall, as well as the application and sanding of asbestos-containing drywall joint compound. The work with these products generated visible dust which he breathed in. In the course of this work Plaintiff Robert D. Martens, Sr., worked with, was exposed to, and breathed in asbestos, asbestos dust, and/or asbestos fibers from joint compounds, tile and flooring products, and possibly other asbestos-containing products and materials.

15.     During the time periods that Plaintiff Robert D. Martens, Sr. worked with and around the aforementioned asbestos-containing products, and/or worked in close proximity to others who were doing the same, he was regularly and frequently exposed to and breathed in respirable asbestos fibers, dust and other finished and/or unfinished asbestos products manufactured, supplied, distributed and/or specified by Defendants. These exposures additionally took place at facilities and premises owned, occupied and operated by the Defendants.

16.     As a result of his aforementioned exposures to asbestos and breathing in of asbestos and asbestos fibers and dusts from the Defendants' products Plaintiff Robert D. Martens, Sr., contracted malignant mesothelioma, with which he was diagnosed in or about October 8, 2018.  Plaintiff continues to suffer from said asbestos disease and its various diverse injuries and attendant complications.

## PARTIES - DEFENDANTS

17.     Defendants, AIR & LIQUID SYSTEMS CORPORATION, Successor by merger to

Buffalo Pumps Inc.; ALCATEL-LUCENT USA, INC., Individually and as successor-in-interest

to Lucent Technologies, Inc., successor by contract and successor by assumption of liability

to Western Electric Company, Inc.; BAE SYSTEMS, INC.,  Individually and as successor in

interest to Kearfott Corporation; BORGWARNER MORSE TEC LLC, as successor-by-merger

to Borg-Warner Corporation; BIJUR DELIMON INTERNATIONAL, INC.; CBS CORPORATION,

a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation, a

Pennsylvania Corporation f/k/a Westinghouse Electric Corporation; CERTAINTEED

CORPORATION; CHEM FLOWTRONICS, INC.; CINCINNATI, INC.; CROWN CORK & SEAL

COMPANY, INC.; DANLY MACHINE CORPORATION; DOALL COMPANY; EATON

ELECTRICAL, INC. f/k/a Cutler Hammer, Inc.; FEDERAL-MOGUL ASBESTOS PERSONAL

INJURY TRUST successor to Felt-Products Manufacturing Co.; FIVES GIDDINGS & LEWIS,

LLC, Individually and as successor in interest to Kearney & Trecker Corporation; GENERAL

ELECTRIC COMPANY; GENUINE PART COMPANY; GLEASON CORPORATION; HARDINGE,

INC.; HONEYWELL INTERNATIONAL, INC., Individually and as successor to Alliedsignal,

Inc., The Bendix Corporation and Warner & Swasey Company; INDUSTRIAL BRUSH CO.,

INC.; INDUSTRIAL HOLDINGS CORPORATION f/k/a The Carborundum Company;

LEBLOND, LTD; MAHAFFY & HARDER EXPORT, INC.; MARATHON PETROLEUM COMPANY

LP; METROPOLITAN INSURANCE COMPANY; MINE SAFETY APPLIANCES COMPANY;

MONARCH CORP.; MONARCH, LLC; NIDEC MINSTER CORPORATION; OCCIDENTAL

CHEMICAL CORPORATION, Individually and as successor in interest to Hooker Chemicals &

Plastic Corporation, successor in interest to Durez Plastics & Chemicals Co.; PFIZER, INC.;

PLASTICS ENGINEERING COMPANY; PNEUMO ABEX LLC, Individually and as successor-by-merger to PNEUMO ABEX CORPORATION, successor-in-interest to ABEX CORPORATION f/k/a AMERICAN BRAKE SHOE COMPANY, f/k/a AMERICAN BRAKE SHOE and FOUNDRY COMPANY including the AMERICAN BRAKEBLOK DIVISION, successor-by-merger to the AMERICAN BRAKE SHOE and FOUNDRY COMPANY and THE AMERICAN BRAKEBLOK CORPORATION, f/k/a THE AMERICAN BRAKE MATERIALS CORPORATION; PRATT & WHITNEY MEASUREMENT SYSTEMS, INC.; PRO MACH, INC.; PSEG POWER, LLC; ROCKWELL AUTOMATION, INC., Individually and as successor in interest for Allen Bradley Company and Rostone Corporation; ROGERS CORPORATION; SAINT-GOBAIN ABRASIVES, INC. as successor to Norton Company; SCHNEIDER ELECTRIC USA, Inc. f/k/a Square D Company;  TRANE U.S. INC.; UNGERER & COMPANY; UNION CARBIDE CORPORATION; UNIVERSAL / DEVLIEG, INC.; W. J. MALONE ASSOCIATES; and WEIL MCLAIN COMPANY, a division of The Marley Company, were manufacturers, suppliers or distributors of asbestos fibers, dust, minerals, particles and other finished and unfinished asbestos products to which Plaintiff Robert D. Martens, Sr., was exposed, or were owners and/or operators of premises and facilities at which Plaintiff Robert D. Martens, Sr., was exposed to these asbestos dusts and fibers.

18.    John Doe Corporations 1 through 50 are the fictitious names of corporations, partnerships, and/or other business entities whose identities are not presently known, and who mined, manufactured, sold, marketed, installed and/or removed asbestos or asbestos containing products to which Plaintiff Robert D. Martens, Sr., was exposed.

19.    John Doe Corporations 51 through 100 are the fictitious names of corporations, partnerships, and/or other business entities whose identities are not

presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, marketed, installed and/or removed asbestos, or asbestos containing products, to which Plaintiff Robert D. Martens, Sr., was exposed.

20.     The term "Defendants" refers to all of the entities named above.

## FIRST COUNT

21.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19 as though hereinafter set forth at length.

22.     The Defendants conduct and/or have conducted business in New Jersey at all times relevant herein.

23.     The Defendants breached their warranties, both express and implied, for fitness of purpose and merchantability.

24.     The Defendants are strictly liable in tort.

25.     As a direct and proximate cause of Defendants' negligence, breach of warranties, both expressed and implied, and strict liability in tort, Plaintiff Robert D. Martens, Sr., contracted mesothelioma and suffered, and continues to suffer, from other various diverse injuries and attendant complications.

26.     It was foreseeable to the Defendants that Plaintiff Robert D. Martens, Sr., and others similarly situated, would be injured as a result of their actions, inactions and misconduct.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

## SECOND COUNT

27.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 as though hereinafter set forth at length.

28.     The Defendants, jointly and severally, marketed an ultra-hazardous product and placed that product in the stream of commerce.

29.     As a direct and proximate result of the Defendants' actions, Plaintiff Robert D. Martens, Sr., contracted mesothelioma and suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

## THIRD COUNT

30.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 28 as though hereinafter set forth at length.

31.     Defendants breached their non-delegable duty to warn and negligently supplied defective materials and products without ensuring that Plaintiff Robert D. Martens, Sr., and his employers were warned about the dangers of asbestos exposure.

32.     Defendants' actions prevented Plaintiff Robert D. Martens, Sr.'s employers from educating Plaintiff Robert D. Martens, Sr., as well as their other employees, on the dangers of asbestos exposure and from taking action to minimize the risks of exposure to asbestos fibers.

33.     As a direct and proximate result of Defendants' actions and inaction, Plaintiff Robert D. Martens, Sr., contracted mesothelioma and suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

        a) Compensatory damages;

        b) Punitive damages;

        c) Pre-judgment and post judgment interest;

        d) Costs;

        e) Attorney fees and litigation expenses; and

        f) Such other relief as the Court may deem just and proper.

## **FOURTH COUNT**

34.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 as though hereinafter set forth at length.

35.   Defendants willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from Plaintiff Robert D. Martens, Sr., from Mr. Marten's employers, and from the general public concerning the known hazards associated with the use of, and exposure to, asbestos products.

36.   Defendants willfully, wantonly and intentionally conspired, and acted in concert, to withhold information from Plaintiff Robert D. Martens, Sr., from Mr. Marten's employers, and from the general public relating to the fact that asbestos fiber inhalation could be fatal.

37.   Defendants willfully, wantonly and intentionally conspired, and acted in concert, to disseminate false product safety information to Robert D. Martens, Sr., to Mr. Marten's employers, and to the general public.

38.   Defendants willfully, wantonly and intentionally conspired, and acted in concert, to prevent the dissemination of information concerning their products' hazards and dangers.

39.   Defendants willfully, wantonly and intentionally failed to take appropriate action to minimize the risks of asbestos exposure to Plaintiff Robert D. Martens, Sr., to Mr. Marten's employers, and to the general public.

40.   As a direct and proximate result of Defendants' willful, wanton and intentional acts, Plaintiff Robert D. Martens, Sr., contracted mesothelioma and suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

## FIFTH COUNT

41.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 39 as though hereinafter set forth at length.

42.     Defendant expressly or impliedly warranted that their asbestos products, which they mined, milled, produced, compounded, converted, processed, sold, supplied, merchandised, distributed, installed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use, and safe for their intended purposes.

43.     Defendants breached said warranties in that their asbestos products were defective, ultra-hazardous, dangerous, unfit for use, not merchantable, and not safe for their intended, ordinary and foreseeable use and purpose.

44.     As a direct and proximate result of defendants' breach of warranties, Plaintiff Robert D. Martens, Sr., was exposed to and came in contact with defendants' asbestos products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products.

45.     As a direct and proximate result of Defendants' acts and ommissions, Plaintiff Robert D. Martens, Sr., contracted mesothelioma and suffered, and continues to suffer, from other various diverse injuries and attendant complications.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

### SIXTH COUNT
### AGAINST METROPOLITAN LIFE

46.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

47.     In or about the year 1930, and at various times prior and subsequent thereto, up to and including the present time, defendant Metropolitan Life Insurance Company undertook and assumed a duty to provide the asbestos industry, the scientific community and company users of asbestos with information, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, advice, designs, equipment, safeguards, guidance and services to properly, adequately and reasonably provide safe working conditions, all allegedly to preserve and protect the life, health and safety of employees exposed to asbestos, including Decedent and co-workers, and

particularly to protect them from the dangerous and defective properties of asbestos, asbestos products and compounds and/or other dangerous substances at or about the workplace.

48.     Plaintiffs aver that various employers and their employees, including plaintiffs and scientists and others similarly situated, were dependent upon the undertakings of Metropolitan to preserve and protect the life, health and safety of individuals, including Decedent, by not assisting the said companies in selling dangerous products.

49.     Metropolitan, by its active and passive negligence, failed to exercise the standard of care and skill it was obliged to exercise by reason of its aforesaid undertakings and assumption of duty, thereby causing, creating or permitting dangerous conditions and exposure to dangerous and defective substances; and thereby failing to properly safeguard Decedent and all others similarly situated.

50.     As a result of the aforesaid negligence of the defendant Metropolitan, Deceent was injured.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants, jointly and severally for:

       a) Compensatory damages;

       b) Punitive damages;

       c) Pre-judgment and post judgment interest;

       d) Costs;

       e) Attorney fees and litigation expenses; and

       f) Such other relief as the Court may deem just and proper.

## SEVENTH COUNT
## AGAINST METROPOLITAN LIFE

51.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

52.     For a number of years, Metropolitan provided insurance coverage for various manufacturers of asbestos-containing products.

53.     For a number of years, Dr. A.J. Lanza served as assistant medical director of Metropolitan.

54.     At all times relevant, the activities of Dr. Lanza hereinafter described were undertaken as a servant, agent or employee of Metropolitan.

> a.  Beginning in approximately 1934, Metropolitan Life Insurance Company and certain asbestos producers and manufacturers including Johns-Manville Corporation and Raybestos Manhattan, through their agents, Vandiver Brown, attorney J.C. Hobart, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, as agent of Metropolitan Life Insurance Company, that Lanza publish a study on asbestos in which Lanza would affirmatively misrepresent material facts about asbestos exposure and concerning the seriousness of the disease processes, asbestosis and related diseases. This was accomplished through intentional deletion of Lanza's feeling of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as causing diseases less serious than they really were known to be. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. This fraudulent misrepresentation and fraudulent nondisclosure was motivated in part by a desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in disputes involving Metropolitan as insurer.

> b.  In 1936, American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns- Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, and United Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement,

these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and could also control in what form such publications were to occur. This agreement gave these companies power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, these companies together with Metropolitan, exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

c.  On November 11, 1948, representatives of the following companies met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Inc., Thermoid Company, Union Asbestos and Rubber Company, United States Gypsum Company and Metropolitan. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

d.  At this November 11, 1948 meeting, these companies and Metropolitan decided to exert their influence to materially alter and misrepresent material facts about the substance of research previously started by Dr. Leroy Gardner at the Saranac Laboratories. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then existing standards of dust exposure for asbestos and asbestos products.

e.  At this meeting, these companies and Metropolitan and subsequently their agent, Dr. Vorwald, intentionally and affirmatively determined that Dr. Gardner's work should be edited to delete material facts about the cancer causing propensity of asbestos and the health effects of asbestos on humans and to delete the critique of the dust standards. This was published, as altered, in the scientific literature. These companies and Metropolitan thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, scientists, and persons exposed to asbestos such as the plaintiffs and Decedent.

f.  As a direct result of the actions as described above, Dr. Gardner's edited work was published in the <u>Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health</u> in 1951 in a form that stressed those portions of Dr. Gardner's work that Metropolitan wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of risks. Metropolitan and the companies it joined with affirmatively and deliberately disseminated this misleading publication.

g.  Such action constituted a material affirmative misrepresentation of material facts involving Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

h.  In 1955, Johns-Manville, for itself and on behalf of Metropolitan, through their agent Kenneth Smith, caused to be published in the <u>AMA Archives of Industrial Health</u>, an article entitled "Pulmonary Disability In Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material representation about the extent of the risk associated with asbestos inhalation.

i.  In 1955, the National Cancer Institute held a meeting at which Johns-Manville, individually and as an agent for Metropolitan and A. Vorwald, as their- agent, affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, Metropolitan was in secret possession of several studies which demonstrated that positive evidence did exist.

j.  Metropolitan approved and ratified and furthered the previous acts of Johns-Manville, Raybestos Manhattan, and A.J. Lanza.

55.  The acts of Metropolitan as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation which proximately caused injury to the Decedent in the following manner:

a.  Metropolitan intended the publication of false and misleading reports and/or the nondisclosure of documented reports of health hazards of asbestos, in order to:

      i.      Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

      ii.     Assist in the continued pecuniary gain through the control and reduction of claims;

      iii.    Influence proposed legislation to regulate asbestos exposure;

      iv.    Provide a defense in lawsuits brought for injury resulting from asbestos disease.

    b.    Metropolitan intended reliance upon the published reports regarding the safety of asbestos and asbestos-related products.

    c.    Plaintiffs and Decedent suffered injury as a direct and proximate result of the acts alleged herein.

56.    Metropolitan has, as previously stated, altered, influenced, and created significant portions of medical literature which are false and misleading statements concerning the dangers of asbestos exposure and disease. In so doing, Metropolitan, and its aforesaid agents, provided a body of medical literature which, when relied upon by persons investigating such literature, would have lead to a false impression of the dangers of asbestos exposure.

57.    Additionally, the publication of such literature acted to inhibit the development of the literature and effectively delayed the dissemination of accurate knowledge of the dangers. Metropolitan owed a duty to the plaintiffs, and the public as a whole, when contributing to the medical literature to do so in good faith and with the reasonable care expected of any professional contributing to such literature; Metropolitan's failure to do so is willful and wanton negligence and a separate intentional tort creating a duty to compensate the plaintiffs for injuries sustained as approximate contributing result of the actions of Metropolitan Life Insurance Company.

58.     As a direct and proximately result of the fraudulent concealment and/or fraudulent representation by Metropolitan and its agents, the Decedent and plaintiffs suffered the diseases, injuries and damages set forth in the foregoing paragraphs.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants, jointly and severally for:

        a) Compensatory damages;

        b) Punitive damages;

        c) Pre-judgment and post judgment interest;

        d) Costs;

        e) Attorney fees and litigation expenses; and

        f) Such other relief as the Court may deem just and proper.

## EIGHTH COUNT
## AIDING AND ABETTING AGAINST METROPOLITAN LIFE

59.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

60.     Defendant, Metropolitan Life Insurance Company, individually and in concert with American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, United Gypsum Company, Thermoid Company and others knowingly agreed and conspired among themselves to engage in a course of conduct that was reasonably likely to result in injury to Decedent.

61.     Defendant, Metropolitan Life Insurance Company, knew or should have known that the perversion of the scientific and medical literature as aforesaid would cause the harmful effects of asbestos exposure and would cause Decedent injury.

62.     Defendant, Metropolitan Life Insurance Company, gave substantial assistance and/or encouragement to the conspirators and this aided and abetted their sale of asbestos products in a defective and dangerous condition and their reduction and control of claims against them.

63.     The actions of Metropolitan Life Insurance Company make it liable to plaintiffs pursuant to Section 876 of the Restatement of Torts (Second) since Metropolitan Life Insurance Company has acted in concert with others to cause harm to the Decedent.

64.     As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, Decedent suffered serious bodily injury and death; endured great pain and suffering and mental anguish; incurred medical expenses; lost earnings and earning capacity; and was otherwise damaged.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper.

## NINTH COUNT
## MISREPRESENTATION AGAINST METROPOLITAN LIFE INSURANCE COMPANY

65.     Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

66.     The actions of defendant Metropolitan Life Insurance Company as described above constituted conscious misrepresentation involving risk of physical harm and/or negligent misrepresentation involving risk of physical harm.

67.     Metropolitan Life Insurance Company is liable to plaintiffs for Decedent's injury pursuant to Section 310 and 311 of the Restatement of Torts (Second).

68.     As a direct and proximate result of the actions of defendant, Metropolitan Life Insurance Company, Decedent suffered serious bodily injury and death; endured great pain and suffering and mental anguish; incurred medical expenses; lost earnings and earning capacity; and was otherwise damaged.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants, jointly and severally for:

a) Compensatory damages;

b) Punitive damages;

c) Pre-judgment and post judgment interest;

d) Costs;

e) Attorney fees and litigation expenses; and

f) Such other relief as the Court may deem just and proper

Plaintiff hereby incorporates by reference all allegations set forth in the Standard Complaint, as amended, which is contained in the Asbestos Manual.  A copy of the Asbestos Manual which contains the Standard Complaint can be obtained from the Middlesex County

Mass Tort Clerk or by visiting the following website: http://www.judiciary.state.nj.us/mass-tort/asbestos/asbestos_amended_std_complaint.pdf.

## DISCLAIMER OF FEDERAL JURISDICTION

Plaintiff specifically disclaims any federal cause of action or any claim that would give rise to federal jurisdiction.  To the extent that any of Plaintiff's asbestos exposure took place on a federal enclave, or to the extent that any of Plaintiff's asbestos exposure occurred on board vessels of the United States military (including Naval ships), or in the construction, maintenance and/or repair of United States military vessels and/or aircraft, Plaintiff's negligence claims against manufacturers, sellers and suppliers of asbestos-containing products installed on such vessels and/or aircraft are not based on the theory of defective design, but rather are based only on the theory of failure to warn. Since there is no evidence that the United States Government or any of its military branches, specifically instructed manufacturers from which it purchased asbestos-containing products not to warn about the health hazards associated with exposure to asbestos, there can be no valid claim to federal jurisdiction pursuant to federal enclave, federal officer or federal contractor provisions of the United States Code.  This disclaimer pertains to all of Plaintiff's claims, including those of negligence and products liability, as asserted herein.

This disclaimer pertains to all of Plaintiff's claims, including those of negligence and products liability, as asserted herein.

## JURY DEMAND

Plaintiff demands trial by jury as to all issues of fact so triable.


## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Clayton Thompson, Esq. is designated as trial counsel in the above captioned matter.


## DEMAND FOR INTERROGATORIES

Pursuant to the Asbestos Litigation General Order, Section VI.B. which can be found at http://www.judiciary.state.nj.us/mass-tort/asbestos/manual/generalorder1.pdf, Plaintiff hereby demands that the above listed Defendants answer Standard Interrogatories in the form prescribed by the Court and within the time provided by the above referenced Order. A copy of the Standard Interrogatories are contained in the Asbestos Manual and may be obtained from the Clerk or by visiting the following website: http://www.judiciary.state.nj.us/mass-tort/asbestos/manual/attache.pdf

## CERTIFICATION PURSUANT TO R. 4:5-1

Pursuant to Rule 4:5-1, I certify that the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that I am not aware of any non-party who should be joined in this action pursuant to R. 4:28 or who is subject to joiner pursuant to R. 4:29-1 (b) because of potential liability to any party on the basis of the same facts.

I further certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false that I am subject to punishment.

MAUNE RAICHLE HARTLEY FRENCH & MUDD
Attorneys for Plaintiffs

By:  _Patrick Timmins_

Patrick Timmins
(NJ Id. No. 008761992)

Dated: January 24, 2019

MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
150 West 30th Street, Suite 201
New York, NY 10001

659 Eagle Rock Avenue, Suite #28
West Orange, New Jersey 07052
(800) 358-5922

**By: Patrick J. Timmins, Esq.  (NJ Id. No. 008761992)**
*Attorneys for Plaintiffs*

RECEIVED & FILED
2019 JAN 25  P 12: 02
MASS TORT CIVIL DIV
MIDDLESEX VICINAGE

|  |  |
|---|---|
| ROBERT D. MARTENS, SR.,<br><br>Plaintiffs,<br><br>v.<br><br>BAE SYSTEMS, INC., Individually and as successor in interest to Kearfott Corporation, et al.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, MIDDLESEX COUNTY<br><br>MID-L- 0 0 8 6 8 - 1 9  AS<br><br>DOCKET NO.: MID-L-_____-19AS<br><br><u>**Civil Action – Asbestos Litigation**</u><br><br>**INITIAL FACT SHEET** |

| | | |
|---|---|---|
| 1. | Full Name: | ROBERT D. MARTENS, SR. |
| 2. | Date of Birth: | 4/5/1943 |
| 3. | Address: | 365 Fenlon Blvd. Clifton, NJ 07014 |
| 4. | Union/Local/Years of Membership | N/A |
| 5. | Date of first claimed asbestos exposure: | Approximately  1962 |
| 6. | Date of last claimed asbestos exposure: | Approximately 2008 |
| 7. | Smoking History: | N/A |
| 8. | State the inclusive dates of smoking history, the products smoked and the amount of product consumed per day: | |
| | a.      Dates: | N/A |
| | b.      Products smoked: | N/A |
| | c.      Amount per day: | N/A |
| 9. | Provide as much of the following information as is presently available: work sites, inclusive dates and trade or occupation for each site: | |